# CHARLESTOWN.

WALSH v. SCHILLING.

Submitted June 26, 1889.—Decided September 16, 1889.

LIMITATION OF ACTIONS—ABSENCE FROM THE STATE.

The provision of section 18, c. 104, Code 1887, that when any right of action shall accrue against a person who had before resided in this State, if such person shall by departing from the same, or by absconding or concealing himself, or by any other indirect ways or means, obstruct the prosecution of such right, the time that such obstruction may have continued shall not be computed as any part of the time within which the said right might or ought to have been prosecuted, does not apply, when the defendant, although once a resident of this State, removed therefrom before any right of action accrued against him, and before the transaction occurred out of which the plaintiff's cause of action arose.

Statement of the case by BRANNON, JUDGE:

On the 2d day of March, 1888, Murtha Walsh brought an action of *assumpsit* in the Circuit Court of Ohio county, against Jno. L. Schilling on the note below described, and the common counts for goods sold, money lent, *etc.* The defendant pleaded *non-assumpsit*, and that action did not accrue within ten years before suit was brought; and the plaintiff replied that on the 3d day of August, 1871, when the several promises and undertakings in the declaration mentioned were made, and previous thereto, the defendant was a resident of the state of West Virginia, and afterwards, on or before 22d day of April, 1873, departed out of the state, and had ever since resided out of it, and thereby obstructed the prosecution of the plaintiff's right; and issue was joined on this replication, and the case was tried by the court in lieu of a jury, and judgment rendered for defendant, to which Walsh has obtained this writ of error.

*Erskine & Allison* for plaintiff in error.

*S. G. Smith* for defendant in error.

BRANNON, JUDGE:

The important question in this case is upon the statute of limitations. The note sued on reads: "Harper's Ferry, W. Va., Aug. 3, 1871. For value received I promise to pay M. Walsh, his heirs, *etc.*, three hundred and twenty 26-100 dollars, with interest. JOHN L. SCHILLING." The statute commenced to run at once on it. The defendant pleaded the limitation of ten years,—the period prescribed by the West Virginia statute. To repel the bar the plaintiff relies on a departure from the state by his debtor, under section 18, c. 104, Code 1887, providing that "where any such right as is mentioned in this chapter shall accrue against a person who had before resided in this State, if such person shall by departing without the same, or by absconding or concealing himself, or by any other indirect ways or means, obstruct the prosecution of such right, * * * the time that such obstruction may have continued shall not be computed as any part of the time within which the said right might or ought to have been prosecuted."

The defendant claims that this exception from the operation of the statute does not apply, because the note was, in fact, made at Reading, Pa., in 1873, while he was resident there, after he had removed from West Virginia, which took place in September, 1872, and that it is not a case within the language of the exception of a person who had before resided in this state. The letter of the statute requires, in order to take such a case out of the statute, that the person shall have before resided in the state. Before what? The accrual of the cause of action, or the making of the debt, or the departure? it may be asked. The decisions in Virginia and this State are not explicit on this point, but they may be construed as requiring residence in the state at the time of the contracting of the liability. In *Wilkinson* v. *Holloway*, 7 Leigh, 277, a person resident in North Carolina, who in Virginia contracted a debt and departed from the state, was held to be within the exception; and in *Abell* v. *Insurance Co.*, 18 W. Va. 400, and in *Hefflebower* v. *Detrick*, 27 W. Va. 16, parties who assumed obligations when in the state, and then departed, were held within the exception. Prof. Minor in his Institutes, (volume 4, p. 515,) expresses the opinion that the statute contemplates that the defendant shall once have been resident in Virginia at some time before the cause of action accrued, and not simply that the cause of action arose in the state. I think these decisions may be said to require that the defendant, to fall within this exception, shall reside in the state when the liability is incurred.

In the late case of *Embrey* v. *Jamison*, 131 U. S. 336 (9 Sup. Ct. Rep. 776) arising under the Virginia statute, which is identical with ours, the Supreme Court of the United States held that statute not applicable when the defendant, though once a resident of that state, removed therefrom before any right of action accrued against him, and before the transaction occurred out of which the plaintiff's cause of action arose. There, the statute having been pleaded, the plaintiff replied that the defendant "had before resided in the state of Virginia, and by departing obstructed him in the prosecution of his right; and the defendant rejoined that he did not so obstruct the suit, because such removal occurred

a long time before any of the alleged causes of action existed or accrued, and that when said causes accrued he was a resident of Louisiana." Justice HARLAN, in delivering the opinion, says:

"We are of opinion that the defendant's rejoinder to the plaintiff's replication to the plea of limitations was improperly rejected. It shows upon its face that the defendant's removal from Virginia occurred nearly twenty years before the contract in question was made, and that when the plaintiff's causes of action accrued he was not a citizen or resident of Virginia, but of Louisiana. The statutory provision upon which the plaintiff based his replication has no application to this case if, as shown by the rejoinder, the defendant removed from Virginia before he made any contract with the plaintiff. We can not suppose that his removal from that state, nineteen years before that contract was made, can be regarded, under the statute of Virginia, as an obstruction to the plaintiff's prosecution of his action. The statute, so far as it relates to obstructions caused by a defendant having departed from the state, means that, being a resident of Virginia when the cause of action accrues against him, and being then suable in that state, the defendant shall not, in computing the time in which he must be sued, have the benefit of any absence caused by his departure after such right of action accrued, and before the expiration of the period limited for the bringing of suit. The plaintiff was at liberty to sue the defendant wherever he could find him. Having elected to sue him in Virginia, the courts sitting there must give effect to the limitation prescribed by her law, without any saving in favor of the plaintiff on account of the defendant's removal prior to the making of any contract whatever with the plaintiff."

So the opinion quoted fixes the date of the accrual of the cause of action as the point of time when the defendant must be a resident of the state to bring him within this exception. Under *Hefflebower* v. *Detrick,* 27 W. Va. 16, if a person is a resident of this state when he incurs the liability, and thereafter departs, whether before or after action has accrued, he is within the exception; and mere temporary presence here in incurring the liability is enough

to make him a resident under the statute. The case, cited above; of *Embrey* v. *Jamison,* is explicit .in holding that where the defendant had removed before contracting the liability, and was not a resident either when the liability arose or the action accrued, he is not within the exception; and the West Virginia cases lend no countenance to the idea that a removal prior to the birth of the liability will bring the defendant under the exception in question. Therefore, as we hold, for reasons below stated, that the defendant, 'though once resident in this state, had removed therefrom before he executed the note sued on, and when he executed it was a resident of the state of Pennsylvania, we hold with *Embrey* v. *Jamison* that the exception does not apply in this case; and the averment of the plaintiff's replication, that when the note was made the defendant was a resident of this state, is not sustained.

I have said that we hold that the note was made .in Pennsylvania, and we do so for the following reasons : The fact, that the note bears date at Harper's Ferry, W. Va., is *prima facie,* and only *prima facie,* evidence of the place of the making of the note and of its maker's residence. *Hefflebower* v. *Detrick,* 27 W. Va. 25, *supra;* 3 Kent, Comm. 96; 1 Daniel, Neg. Inst. § 640. And the deposition of Montague is positive that the note˙was made .at Harper's Ferry, and when Schilling resided there. But Schilling's evidence is equally positive that it was made in Reading, Pa., in the˙spring of 1873, and dated back probably to correspond with the last item of a store account, for which it was given; and it was proven that he then resided there. The judgment below is consistent with the finding that the note was made in Pennsylvania, and that the defendant then resided there; and in deciding this point we are an appellate court, and reject the evidence of Montague wherein it conflicts with Schilling's, treating the evidence as under a demurrer, and give full credit to that of Schilling, and allow it to prove all that may be fairly and reasonably drawn from it. *Board* v. *Parsons,* 24 W. Va. 551; *Claflin* v. *Steenbock,* 18 Gratt. 842; *Garrett* v. *Ramsey,* 26 W. Va. 345. Thus we have only the *prima facie* evidence afforded by the place of the date of the note to prove its date and place of making

and the residence of Schilling on one side, and the positive testimony of Schilling speaking to the contrary on the other; and therefore, while a jury or a judge might have found that the note was made in West Virginia, and while the reason on which the Circuit Court rested its judgment may have been quite another than the fact that the note was made in Pennsylvania, as an appellate court we are compelled to find on this point in harmony with the judgment below,— that is, that the note was made in Pennsylvania, and that the defendant then resided there. This decides this case as regards the note.

As to the demand under the common counts. There is a bill of particulars filed specifying only the note aforesaid, and no other claim. The eleventh section of chapter 125 of the Code requires an account stating the several items of the claim in every action of *assumpsit*, unless plainly described in the declaration, and excludes proof for failure to file it. Hence no proof could be received of any demand for a store-account, and, though defendant from before August 3, 1871, to September, 1872, resided at Harper's Ferry, we can not say when or where the store-account was contracted. But there is a count on an account stated, claiming the same amount specified in the note. No account of particulars, it is true, is required as to this account stated. 4 Minor, Inst. 572, 944; *Fitch* v. *Leitch*, 11 Leigh, 471. But there is no evidence of a rendering of an account or a settlement, except that the note was given to close a store-account; and so this accounting took place at the instant of the execution of the note,—that is, in the state of Pennsylvania, while defendant was there resident; and for reasons above given the exception in the statute could not apply to it any more than to the demand on the note, conceding that, though the note was given to close the original demand, it did not satisfy it, or merge it, or preclude plaintiff from suing on his account stated, as well as the note. *Lazier* v. *Nevin*, 3 W. Va. 622; *Feamster* v. *Withrow*, 9 W. Va. 325; *Bantz* v. *Basnett*, 12 W. Va. 772.

Some other questions are presented by the record; as whether different absences of the defendant from the state can be tacked under the said exception; whether, as he resided across the river from Wheeling, in Martin's

Ferry, we can take judicial notice that Martin's Ferry is outside this State; and whether the court erred in refusing to allow a witness to be recalled after the evidence closed to prove that fact; and, perhaps, whether the defendant having a business office in Wheeling, at which he was daily present, while his domicile and residence with his family were in Martin's Ferry was a resident of this State or of Ohio; but it is manifest that, as we hold that this note was made in Pennsylvania by a party then residing there, and that the exception in the statute can not apply to it, any decision of those questions would be wholly without influence in the decision of the case, and that they are not necessary to be decided in reaching a judgment.

The plaintiff moved for a new trial, and filed affidavits that he never heard that defendant had resided at any time in this State since he removed from it in 1872; that the defendant tendered a rejoinder to the effect that for eleven years following March 4, 1877, he kept a business office in Wheeling, where he was daily present, so that he could have been sued; and that plaintiff's counsel in the argument upon it claimed that defendant had actually resided out of the state during said eleven years, and he understood the fact to be that defendant's daily attendance at his office in Wheeling was only during business hours, and that at all other times he was out of the state, and that defendant's attorney did not dispute this; that the rejoinder was rejected because it did not state that defendant resided in West Virginia, and that the judge in passing upon it stated in the hearing of attorneys of both sides that he understood the defendant resided in Ohio, and had an office in Wheeling, where he was daily present during business hours; that he was unable to be present at the trial, but was informed by his attorney that he was led to believe by the aforesaid facts that defendant would not claim that he resided in West Virginia during any part of said eleven years; and that, when defendant testified on the trial that he had resided in Wheeling from March 12, 1879, to March, 1880, it was a surprise to said attorney; and that he was informed and believed that but for said evidence he would have obtained judgment.

Evidence was given that the defendant having resided in

Wheeling from March, 1879, to March, 1880, then changed his residence to Martin's Ferry. The theory of the plaintiff is that such evidence of a residence in Wheeling broke the continuity of the defendant's absence, and the court held that the two periods of absence before and after his residence could not be tacked. But in view of our decision that the exception of absence of the defendant does not apply, it is immaterial whether the defendant did or did not reside in Wheeling for the years aforesaid. Besides, the affidavit is otherwise insufficient on its face. The affidavit further states that, if allowed a new trial, plaintiff will file a further replication averring a new promise, but gives no reason why he. did not file it before.

An affidavit of plaintiff's attorney is filed, stating that defendant testified that he had sent plaintiff a letter dated 26th February, 1886, containing the language : "Your favor of 24th to hand. I would most cheerfully send you some assistance on account of past obligations, if in my power, but alas, my day of surplus has not come, however much I have worked to improve my condition. If you are insurable, however, I will carry $2,000 on your life for five years for you or your family in settlement of your account. I have five children all in good health, and have a better prospect now of getting something ahead for them than ever I had." Defendant testified that "past obligations" in said letter referred to said debt. If even this is a new promise,—which is doubtful,—why was it not pleaded ? No reason was given why it was not. This affidavit also states that affiant had seen a letter from Schilling, dated February 18, 1880, addressed to plaintiff or his clerk, acknowledging an obligation, and promising to do something with reference to it ; but affiant could not remember its language. Affiant had the letter, but returned it to plaintiff, and believed it to be in possession of plaintiff, and that it would be offered in evidence if a new trial were granted. This affidavit says said letter of 26th February, above quoted, is filed in the papers of the case, and asks that it be read with said affidavit. Affiant also stated that he believed that the plaintiff was in Harper's Ferry.

What the letter contains in the way of a new promise we

do not know.   It proposed to do something in reference to
the debt.   What did it propose to do?   We are not told. Is
it a new promise or not?   We do not know.   If presented
on another trial, would it have any effect?   We can not say.
And yet it is in the plaintiff's possession, and he in Har-
per's Ferry.   Why does not the letter accompany the
affidavit?   The trial closed September 21st, and the court
rendered judgment October 6th, thus allowing time to pro-
duce the letter, for these affidavits bear date on the 4th and
6th of October.   And, had the letter been produced, and
were it a new promise, it may be asked, why did not plaintiff
plead it during the pendancy of the cause?   It was in pos-
session of his counsel and himself, and the plea of the statute
had been filed April 20th before.   No ground is shown for
a new trial.   Therefore the judgment is affirmed, with
damages and costs to defendant in error.

AFFIRMED.