Argued November 2, decided November 30, 1909 ; rehearing denied January 18, 1910.

## JAMIESON *v.* POTTS.

[105 Pac. 93.] ·

BILLS AND NOTES—WHAT LAW GOVERNS.

1. A note executed and delivered by a non-resident while temporarily in the state to a resident thereof is a domestic contract.

STATUTES—CONSTRUCTION—ADOPTION OF STATUTES OF OTHER STATES.

2. The legislature, adopting a statute of a sister state after it has been judicially construed by the courts of the sister state, presumptively adopts the judicial construction.

CONTRACTS—DAMAGES—VALIDITY—CONSTRUCTION—WHAT LAW GOVERNS.

3. The *lex loci contractus* must govern as to the validity, interpretation, and construction of a contract; but the remedy to enforce it or to recover damages for its breach is governed by the law of the forum.

LIMITATION OF ACTIONS—ABSENCE FROM STATE.

4. A non-resident temporarily in the state in November, 1891, executed a note to a resident payable on or before February 15, 1892. He was temporarily in the state in February, 1893, when he executed a second note payable May 1, 1893. He left the state about a week after executing the first note, and did not return until January 27, 1893, when he remained until about five days after giving the second note, and, excepting occasional visits not exceeding one year, he remained without the state until January 1, 1907, when he returned for a temporary purpose. *Held,* that Section 16, B. & C. Comp., providing that, when the cause of action accrues against a person who shall then be out of the state, the action may be commenced within the times limited after the return of such person into the state, etc., governed the cause, and action brought soon after January 1, 1907, was not barred by the six-year statute (Section 6, B. & C. Comp.)

(Mr. Justice KING dissenting.)

From Umatilla: HENRY J. BEAN, Judge.

Statement by MR. JUSTICE SLATER.

This is an action by Robert Jamieson against John Potts to recover the amounts due upon two promissory notes executed by the defendant in Umatilla County, this State, one on November 22, 1891, in favor of plaintiff for the principal sum of $572.70, payable on or before February 15, 1892, with interest and attorney's fees; the other on February 2, 1893, in favor of John Walker for the principal sum of $668.80, payable on May 1, 1893, with interest and attorney's fees. Prior to the commencement of the action, this latter note was assigned to the plaintiff. It is alleged in the complaint that at the time the causes of action accrued, the defendant was absent .from the State, that he has ever since continued to remain out of the State, and that prior to, and at the time of, the execution of the notes, plaintiff and the said John Walker were residents of Umatilla County, Oregon, and continued so to be, the former until the filing of his complaint, and the latter until his death.

The answer admits the execution of the notes, and that they have not been paid. ·By an affirmative answer de-

fendant sets up the statute of limitations of this State as a bar to the action, and in effect avers that at, and long prior to, the execution of the respective notes and the accrual of the causes of action thereon, defendant was, at all times since has been, and still is, a resident of the state of Washington, and that plaintiff knew at all times the place of defendant's domicile.

The reply puts at issue the material averments of the answer, and alleges, in effect: That at the date of the first note defendant was in Umatilla County, engaged in the purchase of cattle, and there executed, and delivered to plaintiff that note, the consideration of which was the price of cattle purchased by him of plaintiff; that about two weeks after such transaction defendant left this State and did not return until on or about January 15, 1893, when he remained within the State about four weeks, during which time he bought, at Athena, Oregon, some cattle of John Walker, to whom he gave the note, which is the basis of the second cause of action; that in about one week thereafter he again left the State of Oregon, and did not return until a few days prior to the time of the commencement of the action. The facts were stipulated in writing, and the cause submitted to the determination of the court without a jury.

From the agreed statement it appears: That the notes were executed at the times and places and under the circumstances alleged by plaintiff; that they have not been paid; that at the time of the execution of the notes, and until the commencement of the action, defendant was a resident of the state of Washington, being but temporarily in the State of Oregon to purchase cattle; that about one week after giving the first note he left this State and did not return until January 27, 1893, when he bought some cattle of John Walker and gave the second note; that about five days thereafter, excepting occasional visits altogether not exceeding one year, he remained without this

State, until January 1, 1907, when he returned to the State on a similar mission, and soon thereafter was served with summons. Upon these facts the trial court found that the statute had not run, and entered judgment in plaintiff's favor, from which defendant has appealed.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Will M. Peterson.*

For respondent there was a brief over the names of *Messrs. Phelps & Steiwer* and *Mr. John McCourt,* with an oral argument by *Mr. Gilbert W. Phelps.*

MR. JUSTICE SLATER delivered the opinion of the court.

MR. JUSTICE KING dissenting.

1. The contention made by defendant is that the facts stipulated and found by the court will not, as a matter of law, support the judgment. An action at law upon a contract or liability, expressed or implied, excepting upon a judgment or decree of any court of the United States, or of any state or territory within the United States, or upon a sealed instrument, is barred, unless commenced within six years after the cause of action shall have accrued. Section 6, B. & C. Comp. As more than 13 years transpired from the date on which each of these notes became due before the commencement of the action, it is evident that the action was barred by the statute, unless plaintiff can bring the facts of the case within the exceptions contained in Section 16, B. & C. Comp., which provides:

"If when the cause of action shall accrue against any person who shall be out of the State or concealed therein, such action may be commenced within the terms herein respectively limited; after the return of such person into the State, or the time of his concealment; and if, after such cause of action shall have accrued, such person shall depart from and reside out of this State, or conceal himself, the time of his absence or concealment shall not be deemed or taken as any part of the time limited for the commencement of such action."

The facts of the present case come within the literal terms of the first clause of this section, for the defendant was out of the State when each of the causes of action accrued, and the term "any person," used in the statute, would ordinarily include a non-resident as well as a resident of the State. Defendant was in the State when. he executed and delivered each of the notes to a resident thereof. It is therefore a domestic, and not a foreign contract. He departed from the State, and after the cause of action accrued, he came again into the State, although for a transient and temporary purpose. It can therefore be said that he "returned" to the State. This court, however, in the early case of *McCormick* v. *Blanchard*, 7 Or. 232, when construing Section 16, made the broad declaration that non-residents are not embraced in either of the exceptions of that section. That case was followed and applied in *Crane* v. *Jones*, 24 Or. 419 (33 Pac. 869), and in *Van Santvoord* v. *Roethler*, 35 Or. 250 (57 Pac. 628: 76 Am. St. Rep. 472.) It is upon these cases that defendant mainly relies to support his position. If what was said in the first case about the proper construction of Section 16 must be taken and applied by us in its full and literal comprehensiveness as the true legislativ intent, then plaintiff's case is not within the exception, and is barred, for it has been stipulated that the defendant was at all times a non-resident of this State. We are of the opinion, however, that the declaration there made was more comprehensive than was necessary under the facts of that case, and perhaps broader than was intended. Under either view it is not binding upon us as applied to the facts now presented. The opinion in *McCormick* v. *Blanchard* must be interpreted and controlled by the facts of that case. The cause of action arose in the state of Illinois, between non-residents of this State. The parties continued to reside there until about three years prior to the commencement of the action, when the debtor removed to, and thereafter resided in, this State.

The facts of that case, as well as those in *Crane* v. *Jones*, 24 Or. 419 (33 Pac. 869), and *Van Santvoord* v. *Roethler*, 35 Or. 250 (57 Pac. 628: 76 Am. St. Rep. 472), come squarely within the provisions contained in Section 26, B. & C. Comp., which reads:

"When the cause of action has arisen in another state, territory, or country, between non-residents of this State, and by the laws of the state, territory, or country where the cause of action arose, an action cannot be maintained thereon by reason of the lapse of time, no action shall be maintained thereon in this State."

The reasoning of the court was that if it were held that the provisions of Section 16 applied to both residents and non-residents, as had been the holding of the courts of New York and Massachusetts, in construing statutes in effect the same as that of our own State, but where no statute similar to Section 26, B. & C. Comp., existed, the result would be to render the latter nugatory, and for that reason it was held that the statute of limitations of this State began to run on the note upon which that action was based, at the time when the cause of action accrued in Illinois, and not at the time when the respondent arrived in this State. To reach this conclusion the provisions of Section 16 were considered in connection with Section 26, and the former was held to apply to residents only. We are now of the opinion that the court, in so holding, entirely misapprehended the state of the law and the purpose and intent of enacting Section 26. Both of these sections are parts of the act of 1862; but prior to the date of the act the substance of Section 16 had been incorporated into the statute law of England and some of the states of this country, and the significations of the words there employed had been judicially determined with practical unanimity. In the case of *Ruggles* v. *Keeler*, 3 Johns. (N. Y.) 263 (3 Am. Dec. 482), the question was raised upon the construction of the proviso in the statute of New York (Rev. Laws N. Y. 1802, p. 563),

which was adopted from the statute of Anne, and of which ours is a substantial enactment. It underwent the scrutiny of that pre-eminently learned and enlightened court, of which Kent was the Chief Justice, who rendered the opinion in that case, and reviewed the English authorities with his usual great ability and learning, and reached the conclusion that the statute under consideration included non-residents as well as residents. "This," he says "has been the uniform construction of the English statutes, which also speak of 'the return' from beyond seas of the party so absent. The word 'return' has never been construed to confine the proviso to Englishmen who went abroad occasionally." The rule there announced has been reasserted and followed by the Supreme Court of the United States, and also by state courts, in numerous decisions upon statutes substantially the same. *Murray's Lessee* v. *Baker,* 3 Wheat. 541 (4 L. Ed. 454) ; *Shelby, Executors,* v. *Guy,* 11 Wheat. 361 (6 L. Ed. 495), *Hall* v. *Little,* 14 Mass. 203; *Wilson* v. *Appleton,* 17 Mass. 180; *Hastings* v. *Pepper,* 11 Pick (Mass.) 41; *Jones* v. *Jones,* 18 Ala. 248; *Dunning* v. *Chamberlin,* 6 Vt. 127; *King* v. *Lane,* 7 Mo. 241; *Kempe* v. *Bader,* 86 Tenn. 189, (6 S. W. 126.)

2. Now, under such known state of the law, "must not the legislature," says Mr. Justice WHEELER, in an able dissenting opinion, rendered in *Snoddy* v. *Cage,* 5 Tex. 106, 117, erroneously cited and referred to in *McCormick* v. *Blanchard,* 7 Or. 232, as 3 Tex. 106, "be supposed to have adopted those words with the meaning which had thus been attached to them by judicial construction? Is it reasonable to suppose that they intended the application to this section of the statute of a different rule here from that which a known judicial construction had given to the same language elsewhere?" The first query has been answered many times by this court in the affirmative, which is consonant with the emphatic and pro-

nounced declarations of most, if not all, courts. In *Pennock & Sellers* v. *Dialogue,* 2 Pet. 18 (7 L. Ed. 327), Mr. Justice STORY said: "It is doubtless true * * that when English statutes, such, for instance, as the statute of frauds and the statute of limitations, have been adopted in our legislation, the known and settled construction of those statutes by courts of law has been considered as silently incorporated into the acts, or has been received with all the weight of authority." So in *Kirkpatrick* v. *Gibson,* 2 Brock. 391 (Fed. Cas. No. 7,848), Mr. Chief Justice MARSHALL said: "I am the more inclined to this opinion because it is reasonable to suppose that, when a British statute is re-enacted in this country, we adopt the settled construction it has received, as well as the statute itself; and such I believe to have been the course of the court in every state of the Union." And again, in *Cathcart* v. *Robinson,* 5 Pet. 264, 279 (8 L. Ed. 120), he said: "The rule which has been uniformly observed by this court in construing statutes is to adopt the construction made by the courts of the country by whose legislature the statute was enacted." And: "The received construction * * may very properly be considered as accompanying the statutes themselves, and forming an integral part of them." Now, in the case of *McCormick* v. *Blanchard,* 7 Or. 232, it was not necessary to overturn this well-recognized principle of construction and ignore the judicial interpretation previously given to Section 16 in those jurisdictions from which it was taken in order to arrive at the decision reached in that case, for to give it such a construction would not have rendered Section 26 nugatory, as assumed, nor does the enactment of the latter section, in conjunction with the former, indicate any legislative intent to impress upon the former any different interpretation than what it had received in other jurisdictions from which it was taken; but, on the contrary, as we now understand it, the presence in the statute of

the latter section points strongly to a legislative intent that the received construction of Section 16 was considered as accompanying the statute and forming an integral part of it.

3. By another principle of law, admitted by all courts, the *lex loci contractus* must govern as to the validity, interpretation, and construction of the contract; but the remedy to enforce it, or to recover damages for its breach, must be pursued according to the law of the forum. Cases above cited, and *Jones* v. *Jones,* 18 Ala. 248. It was held under this principle that where a cause of action arose in another state, territory, or country, between non-residents of the place of the forum, an action based thereon was controlled by the law of the forum as to the time within which it might be brought, and that the action was not barred until the defendant had been within the forum for the full period of the limitation prescribed by the local statute. Thus this particular class of cases was held to come within the exceptions provided by the statutes of Anne and of the states whose decisions have been cited. This doubtless appeared to our legislature as oppressive to foreign debtors in such cases, and to ameliorate the supposed harshness of the law, Section 26 was incorporated into the statute, not to change the previously received interpretation of Section 16, but to take out of the domain of its operation such foreign contracts, and, instead of applying thereto our statute of limitations, to make applicable the law of the place of contract in respect to the remedy.

4. To give Section 16 the construction sought to be applied to it renders the enactment of Section 26 wholly useless, and the law uncertain as to what statute of limitations, the place of contract or the law of the forum, should be applied. To the extent of cases coming within the special facts there stated, we regard Section 26 as a limitation upon the effect of the provisions of Section 16,

as they had been construed and interpreted by the courts of other jurisdictions, whence it was adopted by our legislature, and not in conflict with the entire scope of the latter. Section 26 covers only one of many different circumstances in which a non-resident may appear as a defendant in the courts of this State, as the facts of this case well attest, and to permit its presence in the statute to alter the entire scope of the previously received interpretation of Section 16, because of a supposed conflict in the terms of the two sections, would be doing violence to the well-established rules of statutory construction. In *Barbour* v. *Erwin*, 14 Lea (Tenn.) 721, the Supreme Court of Tennessee gave to a similar statute of that state the same interpretation as this court gave to Section 16 in *McCormick* v. *Blanchard*, 7 Or. 232, and assigned the same reason therefor, viz.: That to otherwise construe the section would render nugatory, because of a supposed conflict, another section of the statute, declaring, in effect, that an action barred by the *lex loci contractus* shall be barred there. But this was subsequently overruled by that court in the case of *Kempe* v. *Bader*, 86 Tenn. 189, (6 S. W. 126) ; Mr. Justice LURTON (page 193 of 86 Tenn. page 127 of 6 S. W.) saying: "If he [defendant] should plead such bar, it would be no answer to rely upon the section now under consideration. There is no necessary conflict whatever. If such a bar had accrued in the state where the right of action accrued, and whilst the defendant was a resident of such state, it would be a complete defense; but if no such bar had been created while such resident, then he can alone rely upon the local prescription, and the effectiveness of that will depend upon the length of his residence in this State."

We are of the opinion that the facts presented bring the present cause within Section 16, that the statute did not begin to run until the defendant returned to the State, and, it being stipulated that he again departed and re-

mained out of the State, excepting that he was thereafter temporarily in the State not to exceed one year from the time the causes of action arose until the commencement of this action, that it is not barred. *Armfield* v. *Moore,* 97 N. C. 34 (2 S. E. 347) ; *Stanley* v. *Stanley,* 47 Ohio St. 225 (24 N. E. 493 : 8 L. R. A. 333 : 21 Am. St. Rep. 806) ; *Hacker* v. *Everett,* 57 Me. 548; *Whitcomb* v. *Keator,* 59 Wis. 609 (18 N. W. 469) ; *Bennett* v. *Cook,* 43 N. Y. 537 3 Am. Rep. 727.) The following cases, cited as holding a contrary doctrine, are not in point, for they are based on statutes materially different from the one now under consideration: *Wheeler* v. *Wheeler,* 134 Ill. 522 (25 N. E. 588 : 10 L. R. A. 613) ; *Lindauer Merc. Co.* v. *Boyd,* 11 N. M. 464 (70 Pac. 568) ; *Embrey* v. *Jemison,* 131 U. S. 336 (9 Sup. Ct. 776 : 33 L. Ed. 172, construing the statutes of Virginia) ; *Walsh* ̇v. *Schilling,* 33 W. Va. 108 (10 S. E. 54) ; *Orr* v. *Wilmarth,* 95 Mo. 212 (8 S. W. 258.)

From these considerations, it follows that the judgment is affirmed.                     AFFIRMED.

Mr. Justice KING delivered the following dissenting opinion:

It is stipulated in this case that at the time the causes of action accrued defendant was absent from the State, and that he has ever since, until immediately prior to the institution of this proceeding, continued to remain out of the State. I therefore dissent from the conclusion announced by the majority, but only on the authority of *McCormick* v. *Blanchard,* 7 Or. 232; *Crane* v. *Jones,* 24 Or. 419 (33 Pac. 869), and *Van Santvoord* v. *Roethler,* 35 Or. 250 (57 Pac. 628 : 76 Am. St. Rep. 472.) My views cannot be more clearly expressed than by quoting from *Van Santvoord* v. *Roethler,* where the sections of the statute here involved were under consideration, in referring to which Mr. Justice WOLVERTON, speaking for this court, says: "It may be inferred from the complaint that the defendant was a non-resident of the State at the time the

action accrued. Such being the case, *McCormick* v. *Blanchard*, 7 Or. 232, and *Crane* v. *Jones*, 24 Or. 419 (33 Pac. 869), are decisive of the controversy. The appellants question the soundness of these cases, and, while we might be disposed to agree with them were it a matter of first impression, we are now bound by the rule of *stare decisis*. If the practice is to be changed after it has been in vogue for so long a time, it should be by the legislature rather than by the courts." See, also, *Buchner* v. *C. M. & N. W. Ry. Co.*, 60 Wis. 264, 267 (19 N. W. 56) ; *Brown* v. *C. & N. W. Ry. Co.*, 102 Wis. 137, 154 (77 N. W. 748 : 78 N. W. 771 : 44 L. R. A. 579) ; *Kirby* v. *Boyette*, 118 N. C. 244, 258 (24 S. E. 18.)